## STATE OF CONNECTICUT *v.* GEORGE LAWLER
### (11127)

FOTI, LAVERY and SCHALLER, Js.

Argued January 14—decision released April 6, 1993

*Kevin C. Ferry,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Margaret Flynn,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of thirty-eight counts of violating the New Britain Housing Code.[1] He claims that the trial court improperly (1) admitted evidence and (2) drew an inference from his silence. He further claims that the evidence was insufficient to sustain his conviction.[2] We affirm the judgment of the trial court.

---

[1] The defendant was ordered to pay a fine of $70 on each count, for a total fine of $2660.

[2] The appellant bears the burden of providing this court with an adequate record for review. Practice Book § 4061; *State* v. *Ong,* 30 Conn. App. 45, 50, 618 A.2d 583 (1993). Here, the trial court did not file a written memorandum of decision; the appellant relies on the oral decision of the court, as transcribed, which was not signed by the trial court judge. Practice Book § 4059 indicates that the trial court is required to state the factual basis of its oral or written decision. In the event that the trial court fails to perform its mandated duty, the appellant must file a motion with this court under either Practice Book § 4183 (1), seeking an order to compel the trial court to file a memorandum, or Practice Book § 4051, seeking an articulation. When an appellant, as here, fails to present the factual basis of the court's decision, he has failed to provide an adequate record. *State* v. *Rios,* 30 Conn. App. 712, 715, 622 A.2d 618 (1993); *Zak* v. *Weisman,* 18 Conn. App. 16, 20, 566 A.2d 181 (1989).

Further, the defendant's brief fails to comply with Practice Book § 4065 "which requires the appellant to support the statement of facts with appropriate references to the record or transcript . . . ." *State* v. *Ong,* supra, 51–52. The defendant did not furnish, as an appendix to his brief, a copy of the transcript containing the oral decision of the court. The defendant did file four of the eight volumes of transcripts; the state filed the remaining four volumes. See *Connecticut National Bank* v. *Browder,* 30 Conn. App. 776, 778–79, 622 A.2d 588 (1993); *State* v. *Rivera,* 30 Conn. App. 224, 225 n.1, 619 A.2d 1146 (1993).

While we do not condone the appellant's noncompliance, we nevertheless choose, in this particular matter, to review his claims.

The defendant, George Lawler, an attorney, filed an application for a commercial loan at Connecticut National Bank (CNB) for the purpose of buying a six-family house, located at 224 Washington Street, New Britain, as an investment. Title to the property was to be held by his daughter, Maureen Parran, as trustee of the family trust. On December 11, 1986, the property was conveyed by warranty deed to Parran, a California resident, as trustee. On the same date, a mortgage note and deed on the property were executed in favor of CNB by Parran, individually and as trustee, through her mother, Frances Lawler, to whom Parran had given power of attorney, and by the defendant, George Lawler. The mortgage deed secured a loan of $90,000.

On June 19, 1989, Parran, in her individual capacity, quitclaimed her interest in the property to Walter Odermann of California. A conveyance tax of $137.50 was paid, indicating that there was a consideration of $125,000 for the transfer. At no time has a release of the CNB mortgage been recorded. The trial court took judicial notice that, at the time of the transfer to Odermann, a prosecution based on housing code violations was pending against Parran's mother, Frances Lawler, involving the property in question, and that Frances Lawler had unsuccessfully asserted the transfer to Odermann as a defense in that action.

On April 30, 1990, after receiving a complaint alleging housing code violations from Kathryn Smith, a tenant at 224 Washington Street, John Salvetti, a New Britain housing inspector, inspected Smith's apartment and found numerous violations. Smith told Salvetti that the defendant was the agent for the property and collected the rents.[3] Salvetti checked the land records,

---

[3] There was no objection by the defendant to this hearsay evidence, nor to much of the hearsay evidence elicited throughout the trial.

which disclosed that Odermann was the record owner. He then contacted Justo (Tito) Gonzalez, the superintendent of the building, whose name was furnished by Smith. Gonzalez told Salvetti that the defendant, an attorney, was in charge of the property and handled all business related to it. Thereafter, on May 2, 1990, Salvetti sent a "notice of violation" by registered mail to the defendant as agent for Odermann. The defendant's office accepted the notice and someone other than the defendant signed the return receipt. The defendant did not reply to this letter. On June 6, 1990, Salvetti again inspected Smith's apartment and, finding that none of the violations had been corrected, he prepared an affidavit to begin prosecution against the defendant.

On November 28, 1990, Gonzalez went to Salvetti's office and furnished a written statement indicating that the defendant was the manager of 224 Washington Street and had appointed Gonzalez as superintendent in June, 1989. The statement further indicated that Gonzalez had collected rent and turned over the money to the defendant until August 1989, and that the defendant had told Gonzalez to use August rent money to make repairs. Gonzalez later provided Salvetti with a rent receipt dated December 3, 1990, which stated "Paid December rent to Tito Gonzalez." The defendant's name also was on the receipt.

The defendant, who appeared pro se in the proceedings in the trial court, first claims that the trial court improperly admitted a bank document as an adoptive admission. He contends that the document, admitted over his objection, should have been excluded as hearsay.

The document in question, identified as an internal credit memorandum, was prepared by a CNB lending officer in accordance with bank procedures, and was

kept in the ordinary course of business of the bank's commercial lending department. The document was prepared at or near the time when the defendant made the mortgage loan application. The state offered this memorandum under the business record exception to the hearsay rule for the limited purpose of establishing the defendant's ownership of the building. The defendant objected to the state's offer because the witness testifying about the document lacked personal knowledge of the loan application, and because the defendant had not been shown the document during the application process. The trial court admitted the credit memorandum as a full exhibit for the limited purpose of showing ownership. Later in the proceedings, when the trial court ruled on the defendant's motion to acquit, the trial court indicated that the same exhibit fell within the adoptive admission exception to the hearsay rule.

Unless the credit memorandum came within an exception to the hearsay rule, the document was inadmissible because it was "[a]n out-of-court statement . . . offered to establish the truth of the matters contained therein." *State* v. *Sharpe,* 195 Conn. 651, 661, 491 A.2d 345 (1985). "To admit evidence under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was in the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . ." (Citations omitted; internal quotation marks omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.,* 219 Conn. 787, 793–94, 595 A.2d 839 (1991). To qualify a document as a business record, the party offering the evidence

must present a witness who testifies that these three requirements have been met. *State* v. *Tillman,* 220 Conn. 487, 506, 600 A.2d 738 (1991), cert. denied, U.S. , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). It is not necessary that the record sought to be admitted was made by that witness or even that the witness was employed by the business at the time the record was made. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.,* supra, 794. Section 52-180 should be liberally construed, and review is limited to determining whether the trial court abused its discretion in admitting a document under that section. Id., 795. A business record admitted under § 52-180 need not have been seen by the defendant or signed or otherwise adopted by him. "[T]he statute recognizes that the trustworthiness of such documents comes from their being used for business and not for litigation." *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 485–86, 586 A.2d 1157 (1991), quoting *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 389, 461 A.2d 422 (1983).

Our review of the record discloses that the state established a proper foundation for admitting the credit memorandum as a business record and met the three criteria of § 52-180. Although the trial court later characterized the memorandum as an adoptive admission, the document was properly admitted as a business record, and we may uphold its admission on that basis. *State* v. *Lynch,* 21 Conn. App. 386, 393, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). The weight to be given the contents of the memorandum was to be determined by the trier of fact, which in this case was the trial court. *State* v. *Santiago,* 224 Conn. 325, 332, 618 A.2d 32 (1992).

The defendant next claims that the trial court improperly drew an inference of assent from his silence. The relevant facts are as follows. During his cross-

examination of Salvetti, the New Britain housing inspector, the defendant elicited testimony that Salvetti sent a "notice of violation" by certified mail to the defendant, as agent for Odermann. According to Salvetti, the certified letter was accepted at the defendant's law office, but the defendant did not respond to it. Salvetti's letter, admitted into evidence, was before the trial court, which noted: "This court finds it strange, almost unthinkable, that a defendant who is an attorney who has gone through one criminal prosecution with his wife on this property with a finding of guilty in January of [1990], would only a few months later do nothing upon the receipt of a notice of violation letter. Silence can be deemed a consent said the case of [*State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986)]."

The defendant acknowledges that he elicited evidence of his "silence," i.e., his failure to reply to a written communication. He challenges only the permissibility of the inference of assent drawn by the trial court. He claims that such an inference is proper only with respect to an oral statement made in the presence and hearing of an accused. We agree with the defendant that the court's inference was unreasonable. We conclude, however, that the inference was harmless.

We accord great deference to the trial court's rulings on the admissibility of evidence and will disturb them on appeal only upon a showing of clear abuse of discretion. *State* v. *Erhardt,* 17 Conn. App. 359, 367, 553 A.2d 188 (1989). In reviewing the trial court's decision "we, therefore, consider whether the trial court could reasonably have concluded, on the basis of the evidence before it, that the fact of the defendant's silence was sufficiently probative of assent to an accusatory statement to permit its admission into evidence

as an admission of silence." *State* v. *Estrada,* 26 Conn. App. 641, 652, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992).

In the prearrest or noncustodial setting, "[t]he rule in Connecticut is that when a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part. *State* v. *Leecan,* [supra]; *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977); *State* v. *Yochelman,* 107 Conn. 148, 152, 139 A. 632 (1927). Evidence of silence in the prearrest setting may be used either as an admission or for impeachment purposes." *State* v. *Daniels,* 18 Conn. App. 134, 138–39, 556 A.2d 1040 (1989). An inference of assent may be drawn only when no other explanation is equally consistent with silence. *State* v. *Vitale,* 197 Conn. 396, 405, 497 A.2d 956 (1985). There are a number of relevant considerations in determining the proper explanation for an actor's silence among which are whether he heard, understood and comprehended the statement to which he did not respond. Id., 406.

The state asks that we extend this general rule to permit the drawing of an inference of assent by the defendant's failure to respond to a written accusation, albeit not as strong an inference as might be warranted by his silence in the face of an oral accusation. The state argues that whether such an inference is proper depends on the circumstances of the case. We are unwilling to extend our general rule in this case. On the record, we cannot say that it was reasonable for the trial court to find that an inference of assent could be drawn from the defendant's failure to respond to a written accusation of this nature.[4] Nevertheless, this

---

[4] The defendant did respond to a second notice of violation sent by Salvetti in November, 1990. In that response, he denied being the owner or agent for the owner of the property.

evidence of the defendant's silence was admitted after being elicited by the defendant; he did not request that the evidence be admitted for limited use. On the basis of these and the other particular circumstances involved in this case, we cannot conclude that the trial court's drawing of an impermissible inference was harmful.

The improper inference in this case does not involve a constitutional violation, and, therefore, the burden is on the defendant to demonstrate the harmfulness of the court's action. *State* v. *Harris,* 182 Conn. 220, 230, 438 A.2d 38 (1980). He must show that it is more probable than not that the court's action affected the result. *State* v. *Pettersen,* 17 Conn. App. 174, 183, 551 A.2d 763 (1988), on appeal after remand, 20 Conn. App. 288, 566 A.2d 714 (1989), cert. denied, 213 Conn. 814, 569 A.2d 550 (1990). The defendant has failed to sustain this burden. As we have pointed out, the trial court did not improperly admit this evidence of the defendant's silence but rather may have merely drawn an impermissible inference of assent from that silence. The record is also clear that the court did not base its finding of guilt on this inference. We therefore conclude that any improper inference of assent drawn by the trial court from evidence of the defendant's silence in the face of a written accusation was harmless.

The defendant's last claim is that the evidence was insufficient to sustain his conviction. He specifically claims that the state failed to prove beyond a reasonable doubt that he was the owner or agent of the owner of the property in question.

"When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the . . . verdict. *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947

(1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the [trier] reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes,* 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989)." *State* v. *Lago,* 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *State* v. *Boykin,* 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564.

As a preliminary matter, we note that to establish liability under the New Britain housing code, the state had to prove that the defendant had charge, care or control of the residential premises as agent of the owner solely or with others. The state was not required to prove that the defendant was the legal or beneficial owner.[5] Further, the issue before us is not whether the

---

[5] The housing code defines the term owner as "any person who, alone or jointly or severally with others: (1) Shall have legal title to any premise, dwelling or dwelling unit, with or without accompanying actual possession

record demonstrates that the evidence sufficiently establishes that the defendant had charge, care or control of the property prior to the June 19, 1989 quitclaim conveyance, but rather whether he had such charge, care or control after that date. The charging documents allege a date on or about June 6, 1990, as the date of the violations. The state having made no claim before the trial court that "legal" title was not, in fact, transferred to Odermann on June 19, 1989,[6] the narrow issue on appeal is whether the evidence presented at trial was sufficient to prove beyond a reasonable doubt that the defendant had charge, care or control of the premises as Odermann's agent at the time the violations occurred. We conclude that it was sufficient.

Since it is necessary to determine whether the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt; *State* v. *Famiglietti, supra*; we must review all the facts and circumstances that the court had before it, including those pertaining to events before the June 19, 1989 transfer. We note also that "[t]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984).

The evidence is clear that the defendant acted as the agent of his daughter Maureen Parran, who was trustee of the family trust, when he obtained the mortgage loan

thereof, or (2) Shall have charge, care or control of any premise, dwelling or dwelling unit, as owner or agent of the owner, or an executor, administrator, trustee or guardian of the estate of the owner. Any such person thus representing the actual owner shall be bound to comply with the provisions of this article and of rules and regulations adopted pursuant thereto, to the same extent as if he were the actual owner." New Britain Housing Code § 13-18.

[6] The state concedes that the record was insufficient for a determination by the trial court that a purchase price was not actually paid, that Odermann was not a bona fide purchaser, or that the sale was made in violation of the trust.

and acquired the property in December, 1986. The evidence also showed that Parran, who resided in California, individually executed a power of attorney to her mother, Frances Lawler, and that the defendant, her father and an attorney, signed the mortgage note in his individual capacity. The trial court recognized that the defendant acted as agent for his trustee daughter in hiring a superintendent, collecting rents, and generally doing all that was reasonably necessary to manage the property for the family trust in place of the trustee.

Within one month after prosecution against the defendant's wife began, the quitclaim deed was executed. The property was conveyed fully encumbered, with no release of the mortgage or discharge of the trustee's liability. The quitclaim deed was signed by Parran, not as trustee, but individually. Five months after the quitclaim deed, in November, 1990, Gonzalez furnished Salvetti with a written statement indicating that the defendant was then the manager of the property and that Gonzalez had accepted rent on the defendant's behalf until August, 1989. Gonzalez' statement further indicated that the defendant directed him to use rent money collected in August, 1989, for repairs.[7] While Gonzalez' testimony was contradictory regarding his having collected rent for the defendant as late as December, 1990, the court did have before it a rent receipt dated December 3, 1990, and signed by Gonzalez on behalf of the defendant.

Our review is conducted without regard to the credibility of the witnesses. *State* v. *Lynch,* supra, 392. The trier of the facts determines with finality the credibility of the witnesses and the weight to be given their

---

[7] In his reply brief, the defendant claims that Gonzalez' out-of-court statements were improperly admitted as evidence. He has not claimed this as an issue on appeal, however, and may not have properly preserved this unclaimed issue by timely filing an objection in the trial court.

testimony. *State* v. *Robinson,* supra, 256. Our function in reviewing the evidence is to construe it in the light most favorable to sustaining the verdict. Viewing the evidence in that light, we then determine whether the trial court reasonably could have found that the defendant retained the charge, care or control of the premises after June 19, 1989, as agent of the legal owner and continued to retain such charge, care or control at the time of the alleged violations. "The existence of an agency relationship is a question of fact." *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 133, 464 A.2d 6 (1983). An essential ingredient of agency is that the agent is doing something at the request of and for the benefit of the principal. *Leary* v. *Johnson,* 159 Conn. 101, 105–106, 267 A.2d 658 (1970). We conclude that, from the evidence presented, the court reasonably could have found that the defendant was the agent of the owner of the property at the time the violations occurred.

The judgment is affirmed.

In this opinion the other judges concurred.