[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for money damages for failure to pay the full amount of monthly charges pursuant to a commercial lease. The plaintiff is the owner of the Connecticut Post Mall in Milford, Connecticut. The defendant is in the retail luggage business. On October 12, 1989, the plaintiff leased store no. 2026 in the Connecticut Post Mall to the defendant until January 1, 1997. On September 3, 1991, the parties entered into an amendment to the lease whereby the defendant would relocate into store no. 2110. The terminal date of the lease remained the same. During calendar year 1996, the year primarily at issue here, the CT Page 626 base rent was $5,096.67. In addition, the lease called for additional charges for promotion and advertising, common area maintenance (CAM), fresh air exhaust system, insurance and property taxes. Over the defendant's objection, the court admitted evidence that the monthly amount of these monthly charges during 1996 and January, 1997 was $2,546.95.
By March, 1996, the defendant was in arrears on his lease obligations due to poor sales and the loss of an anchor store in the mall. The plaintiff's general manager for the mall, Patrick Madden, sent the defendant a notice advising him that the was in default of his lease obligation by failing to pay past due rent of $5,153.51 and that if the did not cure that default within ten days, the plaintiff would terminate his lease. Between March and May, 1996, the defendant made a "rent relief" request with the plaintiff. This is an informal process, not part of the lease agreement and entirely discretionary with the plaintiff.
On or about May 6, 1996, the defendant received another letter from Madden advising him that the owed the plaintiff $16,797.13 in rent charges above the minimum rental due under the lease. The letter advised the defendant that his request for rent relief was under consideration but that it did not waive his obligations under the lease. "Furthermore," the letter continued, "failure to maintain current payments halts the review process, as rent relief cannot be considered for any tenant who is not current. Failure to pay rental charges is a serious lease default that must be cured immediately."
On May 9, 1996, Madden sent the defendant another letter advising him that the had failed to pay the annual adjustments to common area maintenance charges, insurance charges, and property taxes for the period July 1, 1994 to June 30, 1995, for which the had been invoiced three months earlier. The letter stated: "Unless we receive full payment for the amount outstanding within 5 days from your receipt of this letter, it is the intent of Connecticut Post Limited Partnership to terminate your Lease, repossess the premises, and pursue recovery of all costs and expenses afforded us under the terms of the Lease. . ."
The defendant responded by handwritten letter dated May 13, 1996. The defendant explained that the was not coming close to breaking even due to the poor retail market and the departure from the mall of one of its anchor stores, Stop Shop. The defendant offered to do a store closing sale, stating: "I could CT Page 627 probably make up the balance by doing a store closing sale if that is what the mall would want. Our lease is up in January anyway but this [is] not my desire and hope it is not yours."[1]
The defendant then received a notice to quit possession of store no. 2026, a store the had not occupied in nearly five years. Despite the defect in the notice, the defendant met with Madden and reiterated that if the plaintiff wanted him to leave the would do a store closing sale and leave. Madden stated that the recognized that the plaintiff could not "scare" the defendant and that the plaintiff did not wish the defendant to vacate. The two men discussed the possibility of the defendant relocating to a smaller store in the mall. Madden said the would discuss that suggestion with the mall's leasing agent.
From March, 1996 to November, 1996, the defendant paid the plaintiff $5,643.62 per month. This sum was about $600.00 above the minimum monthly rental but about $2,000.00 less than the additional rental charges required under the lease The defendant was unable to generate sufficient revenue to pay the additional charges. On October 25, 1996, prior to the expiration of the lease, the plaintiff brought this action. In December, 1996 and January, 1997, the defendant did pay both the basic monthly rental and the full amount of additional charges. In January, 1997, the plaintiff vacated the store. His lease expired at the end of that month. "Additional facts will be recited as necessary to address the questions presented." State v. Beliveau,237 Conn. 576, 582, 678 A.2d 924 (1996). "Additional facts will be discussed as they become relevant in the context of the defendant's specific claims." State v. Bruno, 236 Conn. 514, 521,673 A.2d 1117 (1996).
The plaintiff claims damages for the defendant's failure to pay the full amount of additional charges under the lease from March to November of 1996, plus prejudgment interest and attorneys' fees. The defendant interposes several claims in defense.
 I
The defendant first claims that the plaintiff is not entitled to recover damages for his inability to pay full amount of additional charges for months other than March, 1996 because that is the only month for which the received a notice from the CT Page 628 plaintiff that the was in default of his obligations under the lease. The defendant claims that the lease makes such a notice a condition precedent to the plaintiff's right to recover damages for breach of the lease.
Section 19.01 of the parties' lease, entitled "RIGHTS UPONDEFAULT," provides:
 Notwithstanding any provision herein to the contrary and irrespective of whether all or any rights conferred upon Landlord by this Article XIX are expressly or by implication conferred upon Landlord elsewhere in this lease, in the event of (i) any failure of Tenant to pay any rental or installments thereof, or any other charges or sums whatsoever due hereunder . . . for more than ten (10) days after written notice from Landlord to tenant that such rental, installments, charges or sums were not received on the date required for payment pursuant to this Lease, or (ii) any default or failure by Tenant to perform any other of the terms, conditions, or covenants of this lease to be observed or performed by Tenant for more than twenty (20) days after written notice from Landlord to Tenant of such default (unless such default cannot be cured within twenty (20) days and Tenant shall have commenced to cure said default with twenty (20) . . . then Landlord, besides other rights or remedies it may have under this lease or by law, shall have the right to (a) immediately terminate this Lease and Tenant's right to possession of the leased premises by giving Tenant written notice that this Lease is terminated . . . or (b) have this Lease continue in effect for so long as Landlord does not terminate this Lease and tenant's right to possession of the leased premises, in which event Landlord shall have the right to enforce all of Landlord's rights and remedies under this Lease, including the right to recover the rent and other charges payable by Tenant under this Lease as they become due under this Lease . . . .
"A lease is a contract and questions concerning it are determined in accordance with usual contract law." AmwaxCorporation v. Chadwick, 28 Conn. App. 739, 741, 612 A.2d 127
CT Page 629 (1992). "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." Lach v. Cahill, 138 Conn. 418, 421, 85 A.2d 481
(1951); see Sicaras v. City of Hartford, 44 Conn. App. 771, 780,692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). "A party cannot recover on a contract unless the has fully performed his obligations under it, has tendered performance, or has some legal excuse for not performing." Ravitch v. StollmanPoultry Farms, Inc., 165 Conn. 135, 149, 328 A.2d 711 (1973); seeSicaras v. City of Hartford supra. "Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstance surrounding the execution of the instrument." Id.
The provision in the lease providing for notice by the plaintiff to the defendant of the latter's failure to pay rental or other charges and for a period "for more than ten (10) days" before the plaintiff exercises the "rights upon default" provided in § 19.01 is clearly not a condition precedent in the classic sense. Section 2.01 of the Lease provides that rent is due "without any prior demand therefor." Moreover, this court holds that the notice provision in § 19.01 was not a prerequisite to the plaintiff's suing for unpaid rent, for three reasons.
First the prefatory clause to § 19.01 of the lease, and the lease as a whole, reflects that the remedies given in § 19.01 are cumulative to those "expressly or by implication conferred upon Landlord elsewhere in the lease. . . ." The lease and its addenda establish a covenant by the defendant to pay both the minimum rental and other payments and charges provided therein in monthly payments. "Considering a lease as a unilateral contract, or a bilateral contract that has been wholly performed by the lessor the covenant to pay rent at certain fixed periods is a contract for the payment of money in installments, and the failure to pay any instalment of rent as it falls due would constitute a partial breach of the lessee's contract." SagamoreCorp. v. Willcutt, 120 Conn. 315, 319-320, 180 A. 464 (1935). "The action in that case is one to recover the rent which the lessee has covenanted to pay, and of course cannot be maintained until such rent becomes due and payable under the terms of the lease." Id., 318. For breach of such a covenant, the lease need not expressly prescribe the remedy, for the common law does so by necessary implication. Knappman Whiting Co v. Middlesex WaterCT Page 630Co., 64 N.J.L. 240, 248-49, 45 A. 692 (1899); 17A Am.Jur.2d, Contracts, § 724 (1991). "Ordinarily a demand for rent when due is not a condition precedent to an action for rent." 52 C.J.S., Landlord Tenant, § 555; cf. Linens of Paris, Inc.v. Cymet, 510 So.2d 1021, 102 (Fla.App. 1987); Abernathy v.Cates, 182 Ga. App. 456, 356 S.E.2d 62, 65 (1987).
Second, § 19.01 is inapplicable here. In the context of this case, after rent is due and unpaid, § 19.01 at best merely establishes a ten day waiting period after the Landlord gives notice of the default in rent payments after which the Landlord may continue the lease in effect and the Tenant's right to possession and concurrently sue the Tenant for rent and other charges "as they become due. . . ." Here, the plaintiff does not complain that the plaintiff commenced suit before the expiration of the lease and of his tenancy.
Third, here, a monthly notice by the plaintiff to the defendant would have been superfluous. The plaintiff, in fact, had sent the defendant three letters — on March 7, 1996, May 6, 1996 and May 9, 1996, informing him that the was in default in his payments under the lease. In his letter to Madden dated May 13, 1996 and even more so in a meeting with Madden later that month, the plaintiff explained that because of the poor retail market and the absence of one of the anchor stores at the mall, the would be unable to pay more than the minimum rental payment each month together with common area maintenance charges until the next Christmas season. Under these circumstances, the "[p]laintiff's sending a notice of default [each month] for failure to pay rent would have been a vain and useless act."Pleasure Island, Inc. v. Pepsi-Cola Metropolitan Bottling Co.,228 F. Sup. 619, 626 (D. Mass. 1964). Such a notice was not a condition to the plaintiff's bringing an action for unpaid rent after the expiration of the lease. Id.
 II
The defendant's second claim is that "the parties modified the rental terms under the lease to allow the defendant to pay $5,643.62 per month as full payment of the base rent and other charges."[2]
"Under the general rules applicable to oral modification of written contracts, in the absence of statutory restrictions a written lease may be subsequently modified as to the amount of CT Page 631 rent, by oral agreement." Baier v. Smith, 120 Conn. 568, 571,181 A. 618 (1935). "Modification . . . . may be inferred from the attendant circumstances and conduct of the parties." Herbert S.Newman Partners v. CFC Construction Ltd. Partnership,236 Conn. 750, 762, 674 A.2d 1313 (1996). The defendant, as the party alleging a modification, bears the burden of proof on that issue.Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397, 402,365 A.2d 1086 (1976). "For a valid modification, there must be mutual assent to the meaning and conditions of the modification and the parties `must assent to the same thing in the same sense [citations omitted] if they are to vary the contract in any way.'Hess v. Dumouchel Paper Co., 154 Conn. 343, 347, 225 A.2d 797."Id.
It is true that, as in Baier v. Smith, supra, 120 Conn. 571, the defendant continued to occupy the premises and pay reduced rent, which the plaintiff accepted. However, the defendant did not prove that the parties intended to modify the lease Rather, the defendant's correspondence to and conversation with Madden reflect that the would pay the reduced rent, because that was the best the could do, and hope that the plaintiff would grant his application for rent relief. Indeed, there is no evidence that Madden, the only agent of the plaintiff with whom the defendant communicated, had authority to modify the lease. See Taylor v.Hamden Hall School, Inc., 149 Conn. 545, 552-553, 182 A.2d 615
(1962) (headmaster's authority did not extend to real estate dealings); Fairfield Lease Corporation v. Radio ShackCorporation, 5 Conn. Cir. 460, 256 A.2d 690 (App.Div. 196 8) (store manager lacked authority to enter into lease). "The law is clear that the burden of proving agency is on the party asserting its existence. See Botticello v. Stefanovicz,177 Conn. 22, 26, 411 A.2d 16 (1979); New England Whalers Hockey Club v.Hair, 1 Conn. App. 680, 683, 474 A.2d 810 (1984)." Robert T.Reynolds Associates v. Asbeck, 23 Conn. App. 247, 251,580 A.2d 533 (1990). The existence of agency is a question of fact for the trier. Housatonic Valley Publishing Co. v. Citytrust,4 Conn. App. 12, 16, 492 A.2d 203 (1985). So too, "[w]hether the parties to a contract intended to modify the contract is a question of fact." Herbert S. Newman Partners v. CFC Construction Ltd.Partnership, supra, 236 Conn. 762. Here, the court finds that the defendant has not proven by a fair preponderance of evidence that the parties intended to modify the written contract.
III
CT Page 632
The defendant next claims that the plaintiff is estopped from claiming amounts in addition to that which the paid in 1996.
The defendant's claim of estoppel is based on the following facts. After the defendant received the notice to quit, the went to Madden's office and told him that if the plaintiff wanted him to leave the mall the would have a going out of business or clearance sale and vacate at the end of May, 1996. The defendant opined that had the done so, the would have been able to sell his inventory and have sufficient funds to pay off the arrearage that had accumulated Madden responded that the recognized that the mall could not "scare him." The court infers that Madden meant that the reason the plaintiff attempted to serve the defendant with a notice to quit was to cause him to pay his arrearage. But the defendant was unable to pay additional monies Moreover, the mall had lost an anchor store, Stop Shop, overall sales had decreased and the last thing the plaintiff wanted was a higher vacancy rate in the mall. The plaintiff did not attempt to evict the defendant. The defendant continued to do business and to tender monthly checks to the plaintiff only for the minimum rent and CAM charges. The plaintiff accepted those checks. In December, 1996 and January, 1997, the defendant tendered, and the plaintiff accepted, the full amount of monthly rent and additional charges.
It is settled that "estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks.) Boyce v. Allstate Insurance Co., 236 Conn. 375,385, 673 A.2d 77 (1996). These elements do not exist here.
The gravamen of the defendant's claim of estoppel appears to be that the plaintiff lulled him into not conducting a going out of business sale from which the could have paid off the arrearage which was then due. The claim is flawed and overlooks an important fact.
The claim is flawed because Madden did not prevent the defendant from conducting a going out of business sale. His lease did. Article VII, § 7.02 (b) of the defendant's lease provided in pertinent part: "No auction, going out of business, fire or bankruptcy sale may be conducted or advertised by sign or CT Page 633 otherwise in the leased premises." If the defendant had wanted to conduct such a sale away from the leased premises, the could have done so. Madden's remark that the plaintiff could not "scare" the defendant is no basis for an estoppel. "`The principles of estoppel . . . are reasonably well defined and plain, and we ought not to substitute for them some hazy and indefinite notions whereby in the supposed interests of justice a convenient theory of estoppel is predicated upon facts which do not fairly sustain it.'" DuCotey v. Wilkenda Land Co., 100 Conn. 255, 261,123 A. 265 (1924), quoting Hanna v. Florence Iron Co., 222 N.Y. 290,302, 118 N.E. 629 (1918). Here, both men acted rationally and in their respective best interests. The defendant sought to minimize his exposure under the lease, which did not expire until January, 1997. This is the important fact which his brief overlooks.[3]
In 1996, when the defendant breached his commercial lease, the law was settled that the plaintiff lessor could continue the tenancy and sue to recover the rent due under the terms of the lease without seeking to mitigate its damages. The also held out hope for rent relief from the plaintiff. The plaintiff did not want another vacancy in its mall at a time when an anchor store had departed.
Nor can estoppel be based on the plaintiff's delay in bringing suit against the defendant until the lease had expired. See Papcun v. Papcun, 181 Conn. 618, 621-622, 436 A.2d 282
(1980); Bessette v. Fidelity Casualty Co., 111 Conn. 549, 557,150 A. 706 (1930); Williams v. Apothecaries Hall Co.,80 Conn. 503, 508, 69 A. 12 (1908); Hull v. Hull, 48 Conn. 250, 257, 40 Am. Rep. 165 (1880) ("who ever heard of an estoppel in an action at law predicated solely on neglect to bring suit for the period of five months?"). The defendant's claim of equitable estoppel is unavailing.
 IV
The defendant's fourth claim is that the plaintiff cannot now claim damages for the defendant's failure to pay CAM charges because of the position taken by the plaintiff earlier in this litigation.
"The following additional facts are relevant to this issue."Wagner v. Clark Equipment Company, Inc., 243 Conn. 168, 187,700 A.2d 38 (1997). In 1996, prior to the commencement of this litigation, the defendant questioned the adjusted billings with respect to the CAM charges assessed against him by the plaintiff. CT Page 634 After the commencement of this action, the defendant served a request for production on the plaintiff and noticed the plaintiff's deposition.[4] The relevant request for production of the defendant, dated February 20, 1997, stated: "Produce all documents calculating plaintiff's claim for damages including the calculation of CAM charges." By pleading dated March 26, 1997, the plaintiff objected, stating that "[t]his request is overly broad, burdensome and irrelevant to defendant's claimed defenses. The defendant has pleaded three extensive special defenses appended to its Amended Answer dated February 25, 1997. . . . Nowhere in the special defenses does the defendant dispute the calculation for the CAM charges. In fact it agrees that it paid those charges for the months of December 1996 and January 1997. Therefore, there is no basis for the defendant to now request documents regarding the uncontested CAM charges." The plaintiff also filed a motion for protective order, dated March 31, 1997, asserting the same basis as the objection to the request for production.
On the day of trial, November 4, 1997, the defendant orally moved in limine to prevent the plaintiff from offering any evidence regarding the amount of CAM charges being levied or assessed against the defendant because, the argued, the defendant had been "prohibited from obtaining any discovery regarding those calculations based on the plaintiff's representation that such charges were `irrelevant' to the case. The defendant also requested an order, pursuant to Practice Book § 231 (d), prohibiting the plaintiff from introducing evidence regarding CAM charges based on the plaintiff's failure to comply with the discovery request. The court denied those motions and admitted the evidence of the amount of CAM charges for which the defendant was claimed to be liable but afforded the defendant to include in his post-trial brief argument as to why the plaintiff should be precluded from recovering damages for the allegedly unpaid CAM charges based on the position taken by the plaintiff in pretrial discovery.
"We begin our analysis by acknowledging the strength of the precedents and policies urged by the defendant." Newman v.Newman, 235 Conn. 82, 94, 663 A.2d 980 (1995). It is true that contrary to the representations of the plaintiff during discovery, the plaintiff now seeks to include the amount of CAM charges as an item of damages in this case. It is also true that Practice Book § 231 provides: "If any party has . . . . failed to respond to requests for production . . . the court may, CT Page 635 on motion, make such order as the ends of justice require.
"Such orders may include the following . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence. . . ." "The purpose of § 231 is to enforce the parties' continuing responsibilities to disclose under Practice Book §§ 224 and 232. Moreover, the purpose of the rules of discovery is to `make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' United States v. Procter Gamble, 356 U.S. 677, 682,78 S.Ct. 983, 2 L.Ed.2d 1077 (1957); Knock v. Knock, 224 Conn. 776,782, 621 A.2d 267 (1993); Picketts v. International Playtex,Inc., 215 Conn. 490, 508, 576 A.2d 518 (1990)." Tessmann v. TigerLee Construction Co., 228 Conn. 42, 50, 634 A.2d 870 (1993).
This court's resolution of this issue is informed by the case of Associated Investment Co. Ltd. Partnership v. WilliamsAssociates IV, 230 Conn. 148, 645 A.2d 505 (1994). In Associated,
the defendants noticed the deposition of the plaintiff's general partner and of the plaintiff, by and through its general partner, for March 31, 1992 and subpoenaed him to appear for that deposition. Neither the general partner nor any other representative of the plaintiff appeared for the deposition. Id., 162-163. The following month, on April 20, two days before the trial was scheduled to begin, the defendants filed a motion for default and for other sanctions, including dismissal, against the plaintiff for its failure to appear for the deposition. The trial court denied the motion because it had not been timely filed.Id., 163. The Supreme Court held that the trial court had not abused its discretion. "The defendants failed to provide the trial court with any reason or justification for their delay in moving for sanctions until April 20, 1992, just two days before the commencement of trial and three weeks after the date scheduled for the depositions. Because the defendants' motion for sanctions was filed on the eve of trial, the court's ability to fashion a remedy designed to vindicate the defendants' interest in obtaining [the general partner's] testimony prior to trial was seriously and, so far as the record reveals, unnecessarily limited." Id., 164.
Here, the defendant failed to obtain a ruling on the plaintiff's objections to production requests and motion for protective order until the day of trial, eight months after those pleadings had been filed. While it is not the policy of the CT Page 636 courts to preside over the defeat of a party because of an opponent's stonewalling; Tianti v. William Raveis Real Estate,Inc., 231 Conn. 690, 702 n. 12, 651 A.2d 1286 (1995); here, the defendant could have circumvented the stonewalling by seeking a judicial determination of the plaintiff's objection and motion prior to the time of trial.
Perhaps perceiving his own culpability in delaying the resolution of the discovery issue until the time of trial, the defendant has couched his claim in terms of foreclosing the plaintiff from asserting an inconsistent position at trial from that which the maintained pre-trial. While avoiding the nomenclature, the essence of the defendant's claim is one of estoppel. But "[a]n essential ingredient of an estoppel is some action or detriment suffered by the party claiming the estoppel in reliance on the act or statement forming the basis for the estoppel. 28 Am.Jur.2d, Estoppel and Waiver, § 28. It is generally held, therefore, that a judicial estoppel does not arise merely from taking an inconsistent position in a proceeding but only when the inconsistency first asserted has been successfully maintained so that it appears unjust to the other party to allow a change. Id. § 70." State v. Anonymous
(1973-9), 30 Conn. Sup. 302, 303, 312 A.2d 715 (1973) (D. Shea, J.). Here, the plaintiff's position was not successfully maintained; the court never ruled on the plaintiff's motion for protective order and objection to defendant's request for production. Cf.Augeri v. Planning Zoning Commission, 24 Conn. App. 172, 179,586 A.2d 635, cert. denied, 218 Conn. 904, 588 A.2d 1383 (1991). Any "success" enjoyed by the plaintiff was voluntarily conferred by the defendant by failing to obtain a judicial determination of the plaintiff's motion and objection. Nor did the defendant move for a continuance prior to the day of trial date in order to resolve the outstanding discovery issues. For these reasons, the defendant cannot prevail on his claim that the plaintiff cannot collect damages for the defendant's failure to pay CAM charges because of the former's objections to discovery.
 V
The defendant's fifth claim is that the plaintiff failed to introduce competent evidence of any outstanding indebtedness. In addition, the defendant claims that the plaintiff failed to sustain its burden of proving that indebtedness. The crux of the defendant's claim is that the plaintiff failed to establish an adequate foundation for a computer-generated document which CT Page 637 purports to reflect his indebtedness.
The document was introduced through Sherry Perry, an employee of the plaintiff who handles the monthly invoicing of all mall tenants. Ms. Perry testified that she processed and received all payments on the computer and generated the computer reports regarding those payments and the defendant's account. She also had personal dealings with the defendant regarding his payments. She further testified that the document which was made an exhibit was made in the ordinary course of business of the plaintiff, that it was the plaintiff's regular course of business to create such documents, and that the information on the document was made soon after the transaction it reflected had occurred. This satisfied the requirements of Connecticut's Uniform Business Records As Evidence Act, General Statutes § 52-180; see, e.g., Crest Plumbing Heating Co. v. DiLoreto,12 Conn. App. 468, 475-76, 531 A.2d 177 (1987). That this particular document was printed-out for purposes of this litigation did not detract from its admissibility since it does not bear circumstantial indicia of lack of trustworthiness. Jefferson Garden Associatesv. Greene, 202 Conn. 128, 140-141, 520 A.2d 173 (1987), see alsoRiver Deck Pile, Inc. v. O G Industries, Inc., 219 Conn. 787,799 n. 10, 595 A.2d 839 (1991); State v. Caprilozzi,45 Conn. App. 455, 459-460, 696 A.2d 380 (1997), cert. denied,243 Conn. 937, ___ A.2d ___ (1997).
However, since the document admitted into evidence was a computer print-out, the defendant was entitled to have the plaintiff lay an additional foundation. "`Section 52-180 should be liberally construed, and review is limited to determining whether the trial court abused its discretion in admitting a document under that section.' State v. Lawler, 30 Conn. App. 827, 832,622 A.2d 1040 (1993). In American Oil Co. v. Valenti,179 Conn. 349, 426 A.2d 305 (1979), our Supreme Court found that a witness must have personal experience with record keeping procedures in order to be competent to testify that computer generated records were made in the ordinary course of business. What is crucial is not the witness' job description but rather his knowledgeability about the basic elements that afford reliability to computer printouts. . . . The witness must be a person who is familiar with computerized records not only as a user but also as someone with some working acquaintance with the methods by which such records are made.' (Citation omitted.) Id., 360-61." Shawmut BankConnecticut v. Connecticut Limousine Service, Inc.,40 Conn. App. 268, 276, 670 A.2d 880, 236 Conn. 915, CT Page 638673 A.2d 1143 (1996).
The information in the document which the defendant challenged pertained to CAM charges. Ms. Perry testified that the charges themselves were approved by Madden and her in Connecticut. The information was then communicated to the plaintiff's California office where it is input in a computer there. While she was obviously not in California when the information was input, she reviewed it before it was "run" and expressed no reservation about its accuracy on the printout. Thus, Perry had actual knowledge of the CAM charges, was familiar with computerized records, created computerized records of her own, used computerized records, had an acquaintance with how such records were made, and neither by her testimony nor in her demeanor expressed any doubt as to the accuracy of the CAM charges reflected in the document, which data she and Madden had communicated to the plaintiff's California office. From this direct testimony and inference, which harmonized with other evidence in the case, the court was satisfied that the document was trustworthy and satisfied the requirements of American OilCo. v. Valenti, supra, 179 Conn. 360-361.
"Conformity with the statutory conditions which permit the admission of business records is deemed to provide reasonable indicia of reliability. American Oil Co. v. Valenti, [supra,179 Conn. 358]. `Even when properly admitt. Id, [however,] such records carry no presumption of accuracy, their credibility remaining a question for the trier of fact. State v. Ward,172 Conn. 163, 170, 374 A.2d 168 (1976).' Id." State v. Waterman,7 Conn. App. 326, 341-42, 509 A.2d 518, cert. denied,200 Conn. 807, 512 A.2d 231 (1986). Any doubt as to the accuracy of the computer records goes to the weight to be afforded them not to their admissibility. Emhart Industries, Inc. v. Amalgamated LocalUnion, 190 Conn. 371, 387, 461 A.2d 422 (1983).
While this court was anticipating some showing from the defendant that the amount of CAM charges assessed against him was suspect, no such showing was ever attempted. Because of this and in light of the testimony of Ms. Perry, the court finds that the plaintiff has proved by a preponderance of evidence, that the amount of the defendant's debt to the plaintiff is $23,393.25.
 VI
Finally, the defendant objects to the plaintiff's claim for CT Page 639 attorneys' fees. While the plaintiff's complaint contains a prayer for attorneys' fees, no evidence of such fees was adduced at trial. While the defendant's brief contains an affidavit of attorneys' fees, the court may not consider that document since the plaintiff has rested and the defendant cannot cross examine the document or the plaintiff's attorney. Conceding that `the court may use its own general knowledge of what would be a reasonable attorney's fee," the defendant argues that this rule applies only where the attorney's services "`are fairly stated and described' in the evidence at trial," citing Appliances, Inc. v.Yost, 186 Conn. 673, 680, 443 A.2d 486 (1982), Piantedosi v.Floridia, 186 Conn. 275, 278, 440 A.2d 977 (1982), and Hoenig v.Lubetkin, 137 Conn. 516, 524-25, 79 A.2d 278 (1951). It is true that in Yost, the court stated: "Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described. See Piantedosi v. Floridia,186 Conn. 275, 279, 440 A.2d 977 (1982), and cases cited therein."Appliances, Inc. v. Yost, supra, 186 Conn. 680. In Hoenig v.Lubetkin, supra, 137 Conn. 525, while the Supreme Court observed that "[t]he [trial] court was advised in detail of the time consumed in and of the efforts devoted to the preparation of the case, and it was, of course, aware of the activities of counsel during the course of actual trial"; Hoenig does not stand for the proposition that no award for an attorney's fee can be made without such a statement.
It is by now well-settled that "[t]he failure to produce evidence as to the reasonableness of legal fees where there is an agreement to pay such fees, however, does not justify a trial court in refusing to award them, if the court can rely on its own knowledge in determining their value. Guaranty Bank Trust Co.v. Dowling, 4 Conn. App. 376, 386, [59 A.L.R.4th 605]494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985)." Niles v.Niles, 9 Conn. App. 240, 250, 518 A.2d 932 (1986). In GuarantyBank Trust Co. v. Dowling, 4 Conn. App. 376, 386, [59 A.L.R.4th 605] 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58
(1985), the court stated: "The plaintiff's failure to introduce any evidence at trial of the value of a reasonable attorney's fee, moreover, does not justify the court's refusal to make that award. `[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees.' Bizzoco v. Chinitz,193 Conn. 304, 310, 476 A.2d 572 (1984). Here, as in Bizzoco v.Chinitz, supra, the `court was in a position to evaluate the CT Page 640 complexity of the issues presented and the skill with which counsel had dealt with these issues.' Id., 311." "It is well established that the trial court may use its own general knowledge in determining what constitutes a reasonable fee.Bizzoco v. Chinitz, 193 Conn. 304, 310, 476 A.2d 572 (1984). A court may rely on what has taken place in the proceeding before it to supply evidence to support an award of attorney's fees. Id. In the present case, the court could have properly considered the number and nature of the pretrial motions that had been filed, the extent of other pretrial activity such as discovery and depositions, as well as trial and post-trial activity. `The court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues.' Id., 311. The record here was sufficient to support the attorney's fees awarded." Pleines v. Franklin Construction Co.,30 Conn. App. 612, 619, 621 A.2d 759 (1993). Based on its examination of the court's file, its knowledge that the trial of this case consumed the better part of a day, and taking into account the fine quality of the plaintiff's post-trial brief, the court awards the plaintiff $6,750.00 in attorney's fees.
 VII
Section 27.13 of the parties' lease provides: "Any amount due from Tenant to Landlord hereunder which is not paid when due (including, without limitation, amounts due as reimbursement to Landlord for costs incurred by Landlord in performing obligations of Tenant hereunder upon Tenant's failure to so perform) shall bear interest at the highest rate then allowed under the usury laws of the state in which the Connecticut Post Mall is located from the date due until paid, unless otherwise specifically provided herein, but the payment of such interest shall not excuse or cure any default by Tenant under this Lease." The plaintiff cites General Statutes § 37a-3a which provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." The plaintiff also cites Solomon v. Hall-Brooke Foundation, Inc.,30 Conn. App. 136, 140, 619 A.2d 866 (1993), wherein the Appellate Court upheld a trial court's award of prejudgment interest at ten per cent on back rent owed.
The court is aware that in Sears, Roebuck Co. v. Board ofTax Review, 241 Conn. 749, 765-766, 699 A.2d 81 (1997), the Supreme Court held that § 37-3a does not fix the rate of CT Page 641 prejudgment interest at ten percent but, rather, establishes a maximum rate above which a trial court may not venture. Sears, however, involved an award of interest pursuant to another statute, General Statutes § 12-117a, not pursuant to a contract. "A trial court acting pursuant to § 12-117a has broad discretion to award interest up to this maximum [10%] rate." Id., 766. A trial court making an award pursuant to a contractual formula has no such discretion.
 VIII
For the foregoing reasons, the court finds that the defendant is indebted to the plaintiff in the amount of $23,393.00 plus $2,339.00 pursuant to § 27.13 of the parties' lease, plus attorneys fees of $6,750.00. Judgment may enter for the plaintiff in the amount of $32,482.00.
BY THE COURT
Bruce L. LevinJudge of the Superior Court