BERKELEY FEDERAL BANK AND TRUST, FSB *v.*
FRANK F. OGALIN ET AL.
(AC 17206)

O'Connell, C. J., and Foti and Lavery, Js.

Argued January 13—officially released March 17, 1998

*Roy W. Moss,* for the appellant (named defendant et al.).

*Valerie E. Maze,* with whom, on the brief, were *Matthew J. Forstadt* and *Marshall Goldberg,* for the appellee (plaintiff).

LAVERY, J. This is an appeal by the named defendant et al.[1] from a judgment of foreclosure by sale rendered by the trial court following its acceptance of an attorney trial referee's report. On appeal, the defendants claim that the trial court improperly accepted the attorney trial referee's report because (1) the referee improperly admitted hearsay evidence on the value of the mortgage debt, and (2) the plaintiff's notice of default was defective. We reverse the judgment of the trial court only as to the calculation of the late charges.

The attorney trial referee found the following facts. On June 4, 1987, the defendants executed a note dated June 4, 1987, for the principal amount of $225,000 in favor of the Bank Mart and secured by a mortgage on the property of the defendants at 1451 North Peters Lane, Stratford. The mortgage and note, after various assignments, is owned by the plaintiff.[2] Notice of default and notice of the plaintiff's right to accelerate the balance of the loan was dated July 6, 1992, and received by the defendants on July 9, 1992. The notice of acceleration provided for a right to cure a default within forty-five days of the date of the notice. The acceleration notice provision was satisfied by the notice providing forty-five days from July 6, 1992, to allow the defendants to cure their default by August 20, 1992, a date that could be specifically determined from the notice and that was at least thirty days from the date of the receipt of the letter. The defendants failed to cure the default.

The computer generated records of Gateway Bank and the plaintiff, which were kept in the ordinary course

---

[1] Subsequent encumbrancers were also named as defendants. In this opinion, we refer to Frank F. Ogalin and Verna T. Ogalin as the defendants.

[2] On July 15, 1993, Gateway Bank, the successor in interest to the Bank Mart, assigned the mortgage and note to Berkeley Federal Bank and Trust, FSB, the plaintiff.

of business, reflected entries made when transactions took place, were regularly updated and were required to be kept by each institution in the course of its business. The defendants' special defense of lack of notice was found not proven and the giving of notice was found to have been proven by the plaintiff.

The attorney trial referee recommended judgment for the plaintiff, finding the debt to be $323,266.81 as of June 16, 1996. Foreclosure by sale was also recommended. The attorney trial referee's report was filed on April 17, 1996. On April 28, 1997, the trial court accepted the report and rendered a judgment of foreclosure by sale. The trial court found that the total amount of the debt was $349,780.99. As part of that debt, $4081.99 was awarded to the plaintiff as late fees.

I

The defendants' first claim is that the trial court improperly accepted the attorney trial referee's report because the referee admitted inadmissible hearsay evidence on the value of the mortgage debt. Specifically, the defendants claim that the following bank records—a computer generated printout showing the total payoff amount of the mortgage, a summary of escrow advances, a computer generated transaction history concerning the defendants' loan, a computer generated "collection card" and the notice of default—are inadmissible hearsay and that the plaintiff failed to satisfy the statutory requirements for the admission of business records as a hearsay exception. We disagree.

Unless the default notice and computer generated printouts come within an exception to the hearsay rule, the documents are inadmissible because they are out-of-court statements offered to establish the truth of the facts contained in the statements. *Shadhali, Inc.* v. *Hintlian,* 41 Conn. App. 225, 227, 675 A.2d 3, cert.

denied, 237 Conn. 926, 677 A.2d 948 (1996). The documents in question were admitted under the business records exception to the hearsay rule over the defendants' objections on hearsay grounds. See General Statutes § 52-180.[3] "General Statutes § 52-180 permits hearsay evidence to be admitted if (1) [the] writing was made in the regular course of business, (2) it was the regular course of the business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence or within a reasonable time thereof. *State* v. *Scott*, 31 Conn. App. 660, 665, 626 A.2d 817 (1993). To qualify a document as a business record, the party offering it must present a witness who testifies that these three requirements have been met. *State* v. *Lawler*, 30 Conn. App. 827, 831–32, 622 A.2d 1040 (1993). The trial court has discretion to determine whether the statute is satisfied and appellate courts must construe the statute liberally when reviewing abuse of discretion. *State* v. *Scott*, supra [665]; *State* v. *Lawler*, supra [832]. *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 709–10, 638 A.2d 44 (1994)." (Internal quotation marks omitted.) *Shadhali, Inc.* v. *Hintlian*, supra, 227–28. "[T]he essential hallmark of admissibility under § 52-180 is the trustworthiness of the document; *American Oil Co.* v. *Valenti*, 179 Conn. 349, 358–59, 426 A.2d

[3] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

305 (1979) . . . ." (Citations omitted.) *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 141, 520 A.2d 173 (1987).

We hold that the attorney trial referee did not abuse his discretion by admitting the exhibits in question pursuant to the business records exception to the hearsay rule. One exhibit was the plaintiff's computer generated printout showing the total payoff amount of the debt as of the date of trial, January 16, 1996. At trial, Jan Carter, the plaintiff's research loan servicing supervisor, testified that the exhibit was an accurate copy of the information contained in the plaintiff's computers concerning the mortgage loan of the defendants. In addition, Carter testified that (1) computer records are maintained in the regular course of banking business generally and at Berkeley Federal Bank, (2) computer records are updated promptly when there is any change in account information, and (3) she utilizes computers at Berkeley on a regular basis in her position, and that she also reviews the information on the computer system for accuracy and requests maintenance changes based on research conducted to determine if adjustments are required to the records on the system. This testimony satisfies the requirements of § 52-180. Therefore, the exhibit was properly admitted to establish the defendants' debt at the time of trial.

Carter also testified that another exhibit was a summary of escrow and other advances made from and on behalf of the defendants' account. She further testified that she created the document from information she gathered on the plaintiff's computers, that the document was created for use in this litigation and that foreclosure litigation is conducted in the regular course of the plaintiff's business as a bank.

Linda Sock, who was the litigation manager of Gateway and Gateway's assistant treasurer at the time of

the default, testified in regard to the Gateway computer generated transaction history concerning the defendants' mortgage loan. Sock testified that loan transaction histories are generated in the regular course of banking business, are a regular part of the business at Gateway and were updated automatically when there was action on an account.

Sock also testified concerning the exhibit that she identified as a copy of her computer generated collection card. That exhibit is a two part document, one part consisting of a computer printout containing loan balance information and the other a narrative by Sock. Sock testified that in the regular course of banking business, she would document conversations with the defendants or any action taken on the account, that it was the regular course of business at Gateway to make notes regarding contacts with debtors and that the notes were made immediately following contact with the customer.

On appeal, the defendants argue that Sock's narrative was made for the purpose of litigation. This issue was not raised at trial. "We need not review any claim of error that was not properly raised at trial. [Practice Book § 4061.]" *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 140. Even if we were to ignore the defendants' procedural failure, we would still hold that this exhibit was admissible. Documents prepared for litigation are not automatically excluded on a per se basis. Id. The proper test is whether these documents "bear circumstantial indicia of lack of trustworthiness." Id., 141. "Although this court has recognized that the trustworthiness of business records, under § 52-180, 'comes from their being used for business and not for litigation'; *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 388–89, 461 A.2d 422 (1983); we have not thereby mandated the

exclusion of multipurpose documents that have ancillary utility in subsequent litigation." Id., 141. The plaintiff offered this exhibit into evidence for Sock's written narrative record on the exhibit itself, documenting the defendant Frank F. Ogalin's admission that the mortgage loan was in default and acknowledging receipt of the notice of default, and not as evidence of the amount of the debt. It was properly admitted by the attorney trial referee.

The notice of default was also introduced through Sock. She testified that she created the notice based on information that she personally took from the loan file and information on the Gateway computer. Further, she testified that it was a regular part of Gateway's business practice to photocopy default letters the same day they were typed and to keep a copy in the bank's records. Also, she testified that it was a normal part of Gateway's business practice to mail default letters return receipt requested, and upon receiving the return receipt to staple it to the copy of the letter.

We conclude that it was not an abuse of discretion for the attorney trial referee to admit the computer printouts and the notice of default pursuant to § 52-180. Thus, it was also not an abuse of discretion for the trial court to accept the attorney trial referee's report.

II

The defendants also claim that the trial court improperly accepted the attorney trial referee's report because the plaintiff failed to provide the defendants with proper notice of the default according to the requirements of the mortgage. Specifically, the defendants argue that the notice of default failed to meet the requirements of paragraph 19 of the mortgage because (1) it referred to 15 Pamela Drive, whereas the mortgaged property itself is 1451 North Peters Lane, and (2) it failed to state

that failure to cure the alleged default may result in a sale of the property.

The defendants' claim that the notice was deficient because it referred to 15 Pamela Drive instead of 1451 North Peters Lane is without merit. The notice of default was addressed and sent to the defendants at 1451 North Peters Lane. The letter referenced the correct mortgage number. At trial, documents were introduced showing that the defendants received actual notice of the default.[4] Further, Sock testified that Frank F. Ogalin acknowledged receipt of the notice of default letter and that he was in fact delinquent on the mortgage loan.

The defendants also claim that the notice of default was deficient in not stating that failure to cure may result in the sale of the property as required in paragraph 19 of the mortgage. Paragraph 19 of the mortgage provides in part: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Agreement. The notice shall specify . . . (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property."

The notice of default received by the defendants stated in part: "Please be advised that absent curing the default within the time period indicated, Gateway bank may accelerate all sums secured by your mortgage without further demand upon you. We may also [invoke] any of the remedies permitted by law including the FORECLOSURE of the real property given to secure the mortgage." The plaintiff properly notified the defendants of the possibility of foreclosure if they failed to

---

[4] For instance, one exhibit contains the handwritten notes of Sock concerning various conversations she had with the defendant Frank F. Ogalin in which he acknowledged the default and receipt of the notice of default.

cure. In Connecticut, foreclosures are either strict or by sale. General Statutes § 49-24. Therefore, by notifying the defendants of the possibility of foreclosure, the plaintiff properly satisfied the requirements of paragraph 19 of the mortgage.

### III

Finally, this court, sua sponte, addresses the trial court's assessment of late charges against the defendants. In a footnote in the plaintiff's brief, the plaintiff acknowledges that after the trial in the present case, we released our decision in *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 671 A.2d 1303 (1996).

In *Napert-Boyer Partnership*, we held that a plaintiff may not recover late charges once the note has been accelerated and demand for payment has been made on the defendants. Id., 443. We agreed with the reasoning of the United States District Court for the District of Connecticut in *Federal Deposit Ins. Corp.* v. *M.F.P. Realty Associates*, 870 F. Sup. 451 (D. Conn. 1994), that " 'while a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower.' " *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, supra, 40 Conn. App. 443, quoting *Federal Deposit Ins. Corp.* v. *M.F.P. Realty Associates*, supra, 455. "If the late charges are allowed to continue after demand for payment in full upon default, it would, in effect, become a penalty since the plaintiff is being compensated for the default by the higher interest rate." *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, supra, 443–44. We concluded that the trial court improperly assessed late fees against the defendants through the date of trial. Id., 444.

Paragraph six of the promissory note provides that the defendants will pay a late charge of 5 percent of any overdue payment of principal and interest. In a letter dated October 8, 1992, the plaintiff made a formal demand for payment to the defendants and notified them that their loan had been accelerated, causing the entire unpaid balance to be due and payable immediately.

The plaintiff correctly states that the defendants have failed to claim that the calculation of late charges was erroneous, improper or not allowable. Nevertheless, equity requires us to remand this case to the trial court for the proper determination of the late charges to be assessed against the defendants consistent with *Napert-Boyer Partnership*.

The judgment is reversed only as to the determination of late charges and the case is remanded for further proceedings to redetermine those charges consistent with this opinion and to set a new sale date. The remainder of the judgment is affirmed.

In this opinion the other judges concurred.