STATE OF CONNECTICUT *v.* RAFAL ROZMYSLOWICZ
(AC 17017)

STATE OF CONNECTICUT *v.* JAKUB KLOCEK
(AC 17062)

Foti, Lavery and Sullivan, Js.

Argued December 11, 1998—officially released March 9, 1999

*Norman A. Pattis*, for the appellants (defendants).

*Toni M. Smith-Rosario*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendants, Rafal Rozmyslowicz and Jakub Klocek, appeal from judgments of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (1) and 53a-8 and larceny in the second degree in violation of

General Statutes § 53a-123 (a) (2).[1] The defendants claim that the trial court improperly (1) denied their motions for judgments of acquittal because there was insufficient evidence to support their convictions of burglary in the first degree and (2) refused to charge the jury on the lesser included offense of using a motor vehicle without permission. We affirm the judgments.

The jury reasonably could have found the following facts. At some time between 11 p.m. on June 29 and 2:40 a.m. on June 30, 1995, the defendants entered Mary DellaCamera's home by cutting a screen on her open living room window. The defendants took a ring, a watch and the keys to DellaCamera's 1991 automobile. They also took two steak knives. The defendants then exited the home and drove away in DellaCamera's car.

Officer Edward Keyes of the Branford police department observed the car moving at an unusually slow pace and the brake lights were being repeatedly tapped. Without activating his lights or siren, Keyes followed and requested a license plate check on the car. The license plate check indicated that the car belonged to DellaCamera. The defendants parked the car in an apartment parking lot in Branford. Keyes parked behind the car and stopped the defendants as they began to exit. After the defendants gave their names, Keyes shined a flashlight into the car and observed two steak knives on the backseat. Meanwhile, a second police officer, Ronald Washington, went to DellaCamera's home, where DellaCamera stated that her car was missing along with a watch and a ring that she had left in her kitchen. The police arrested the defendants. The defendants were convicted, and these appeals followed.

I

The defendants first claim that the trial court improperly denied their motions for judgments of acquittal of

---

[1] The jury also found the defendants guilty of burglary in the second degree in violation of General Statutes §§ 53a-102 (a) and 53a-8.

burglary in the first degree. Specifically, the defendants assert that there was insufficient evidence to support a conclusion that the defendants possessed a "dangerous instrument" as required by the burglary statute. We disagree.

"Our Supreme Court has stated: In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 16, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. *State* v. *Carter*, [196 Conn. 36, 44, 490 A.2d 1000 (1985)]. It is within the province of the jury to draw reasonable and logical inferences from the facts proven. Id.; *State* v. *Williams*, 169 Conn. 322, 336, 363 A.2d 72 (1975). The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. *State* v. *Williams*, 202 Conn. 349, 355, 521 A.2d 150 (1987); *State* v. *Carter*, supra, 44–45; *State* v. *Gabriel*, 192 Conn. 405, 425, 473 A.2d 300 (1984) . . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989). *State* v. *Lago*, 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992). It has been repeatedly stated that there is no legal distinction

between direct and circumstantial evidence so far as probative force is concerned. *State* v. *Haddad*, 189 Conn. 383, 390, 456 A.2d 316 (1983); *State* v. *Perez*, 183 Conn. 225, 227, 439 A.2d 305 (1981). It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Perez*, supra, 227. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992)." (Citations omitted; internal quotation marks omitted.) *State* v. *Radzvilowicz*, supra, 47 Conn. App. 16–18.

General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ." General Statutes § 53a-3 (7) defines dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." Whether a person arms himself with a dangerous instrument after entering the dwelling or enters the dwelling already armed is irrelevant with respect to his culpability under the statute. *State* v. *Belton*, 190 Conn. 496, 507, 461 A.2d 973 (1983). Although an item's potential for use as a weapon does not make it a dangerous instrument; *State* v. *Grant*, 177 Conn. 140, 146 n.5, 411 A.2d 917 (1979); the facts and

circumstances of a particular case may make such an inference permissible.

These defendants entered DellaCamera's dwelling at night and took various valuables. While committing the burglary, the defendants armed themselves with two steak knives. The knives had little value. The knives were not used as tools; the evidence showed that the defendants cut the window screen to gain entry to the home before they acquired the knives. The evidence also showed that the defendants were aware of the presence of the inhabitants in the home. Under these circumstances, the jury could reasonably infer that the defendants took the knives to arm themselves in case the inhabitants of the home confronted them rather than for their value or as tools. That such a confrontation never occurred does not matter.

Contrary to the defendants' assertion, *State* v. *Grant*, supra, 177 Conn. 140, is inapposite. In *Grant*, the Supreme Court reversed a conviction of attempt to commit burglary in the first degree in which the dangerous instrument was a tire iron used to gain entry to the building. In that case, no evidence was offered to show that the tire iron was used as a weapon, intended or attempted to be used as a weapon or that the tire iron was ever inside the building. That is not the case here where the defendants acquired the knives in DellaCamera's kitchen. They neither used the knives as burglary tools nor took them for value. It was not unreasonable for the jury to infer from the evidence that the defendants took the knives to arm themselves during the burglary.

On the basis of our review of the record, we conclude that there was sufficient evidence for the jury to conclude that the defendants were armed with dangerous weapons and thus committed burglary in the first degree.

## II

The defendants' second claim is that, with respect to the charge of larceny in the second degree, the trial court improperly refused to charge the jury on the lesser included offense of operating a motor vehicle without permission.

"In determining whether the trial court was required to charge the jury on a lesser included offense, the reviewing court must apply the four-pronged test in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). A defendant is entitled to an instruction on a lesser included offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. Id. In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, [supra, 588], we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense. . . . *State* v. *Collins*, 45 Conn. App. 6, 9–10, 692 A.2d 865 (1997)." (Internal quotation marks omitted.) *State* v. *Preston*, 46 Conn. App. 778, 781–82, 700 A.2d 1190, cert. granted on other grounds, 243 Conn. 946, 704 A.2d 800 (1997).

The defendants' claim fails to satisfy the second prong of *Whistnant*. That prong requires that it not be possible to commit the greater offense without committing the lesser offense. "[T]he court may look only to the information and bill of particulars—as opposed to the evidence presented at trial—to determine what constitutes a lesser included offense . . . ." *State* v. *Troynack*, 174 Conn. 89, 96–97, 384 A.2d 326 (1977). The third counts of the informations charges that the defendants "with the intent to deprive another of property or to appropriate the same to himself or a third person, did wrongfully take, obtain or withhold such property from an owner, the value of which exceeds $5000, said conduct being in violation of §§ 53a-123 (a) (2) and 53a-8 of the Connecticut General Statutes." The fourth counts of the informations charge that the defendants "did possess or retain stolen property knowing that it has probably been stolen, the value of which property exceeds $5000, said conduct being in violation of §§ 53a-123 (a) (2) and 53a-8 and 53a-119 (8) of the Connecticut General Statutes." As the information is written, it is possible to commit the greater offense of larceny in the second degree without committing the lesser offense of operating a motor vehicle without the owner's permission. Specifically, one may "wrongfully take, obtain or withhold" or "possess or retain stolen property" the value of which exceeds $5000 without involving a motor vehicle. Thus, the second prong of *Whistnant* is not met.

The defendants would have us ignore binding case law and look beyond the information to conclude that using a motor vehicle without permission is a lesser included offense in this case because only the car could have provided the $5000 value required by the larceny statute. Even if we were to do so, the defendants' claim would still fail to satisfy the fourth prong of *Whistnant* because the proof on the element differentiating the

offenses, i.e., intent permanently to deprive,[2] is not sufficiently in dispute. "The fourth prong of *Whistnant* specifically requires that the 'proof' be 'sufficiently in dispute.' Such proof is 'sufficient' when it is 'marked by [a] quality [such as] to meet with the demands, wants or needs of a situation . . . .' Webster, Third New International Dictionary. In the *Whistnant* context, therefore, the proof is 'sufficiently in dispute' where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. See *Sansone* v. *United States*, 380 U.S. 343, 349–50, 85 S. Ct. 1004, 13 L. Ed. 2d 882 (1965); *Sparf and Hansen* v. *United States*, 156 U.S. 51, 63–64, 15 S. Ct. 273, 39 L. Ed. 343 (1895); *United States* v. *Brown*, 551 F.2d 236, 239 n.4 (8th Cir. 1977). This rationale comports with the view that '[f]act finding does not require mathematical certainty. [But] [j]urors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.' *Schulz* v. *Pennsylvania R. Co.*, 350 U.S. 523, 526, 76 S. Ct. 608, 100 L. Ed. 668 (1956). Moreover, the trial court, in making its determination whether the proof is 'sufficiently in dispute,' while it must carefully assess all the evidence whatever its source, is 'not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence].' *United States*

---

[2] "Larceny requires the existence of a felonious intent in the taker to deprive the owner of [the property] permanently." *State* v. *Marshall*, 3 Conn. App. 126, 129–30, 485 A.2d 930 (1985), appeal dismissed, 199 Conn. 244, 506 A.2d 1035 (1986).

v. *Sinclair*, 444 F.2d 888, 890 (D.C. Cir. 1971)." *State* v. *Manley*, 195 Conn. 567, 578–580, 489 A.2d 1024 (1985).

The defendants argue that, because the state's evidence linking the defendants to the victim's home was circumstantial rather than direct, the proof is sufficiently in dispute to meet the fourth prong of *Whistnant*. "There is no distinction between direct and circumstantial evidence so far as probative force is concerned . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). The evidence at trial showed that the defendants were in possession of the automobile, watch, ring and knives less than five hours after Della-Camera last saw these items. The evidence also showed that the DellaCamera's car keys were in her pocketbook when she went to sleep on the night of the burglary and that her car was parked in front of her home. The defendants offered no explanation as to how they came into possession of the stolen property nor did they offer any proof that they did not intend to deprive DellaCamera of her property.[3] Because the proof of the element differentiating the greater charge from the lesser is not sufficiently in dispute, the defendants have not satisfied the fourth prong of *Whistnant*.

We conclude that the trial court did not act improperly in refusing to charge the jury on the lesser included offense.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[3] Rozmyslowicz did tell Keyes that he had gotten the car from "John." He did not explain or elaborate on this, nor do the defendants on appeal point to anything in the record that would create a sufficient dispute to meet the fourth prong of *Whistnant*.