STATE OF CONNECTICUT *v.* RICKY LEE BARNETT
(AC 16926)

Spear, Hennessy and Daly, Js.

---

582

Argued October 28, 1998—officially released June 1, 1999

*Robert J. McKay*, special public defender, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *Kevin Murphy*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Ricky Lee Barnett, appeals from the judgment of conviction, rendered after a jury trial, of rioting in a correctional institution in violation of General Statutes § 53a-179b, possession of a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (4), and § 53a-8, and assault in the second degree in violation of General Statutes §§ 53a-60 (a) (1) and 53a-8. The defendant claims that the trial court improperly denied his motions for a judgment of acquittal and for a new trial because (1) the

evidence was insufficient to support his convictions of rioting in a correctional institution, assault in the first degree and assault in the second degree, (2) the state improperly charged him as both a principal and an accessory to the first degree assault and the court improperly instructed the jury that he could be convicted as both, (3) the state committed prosecutorial misconduct, (4) the trial court improperly deprived him of his right to have the trier of fact decide factual issues by holding that there were dangerous instruments at or near dormitory 4B on the date of the incident, (5) the trial court improperly instructed the jury on the second degree assault charge, (6) his conviction of assault in the first degree of John Bratz, another inmate, under both subdivisions (1) and (4) of § 53a-59 (a) were multiple punishments for the same offense and violated his right against double jeopardy under the United States and the Connecticut constitutions, and (7) the trial court improperly admitted into evidence a list of inmates inside dormitory 4B after the riot. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In July, 1994, the defendant was housed in building four, dormitory B (dorm 4B) of the Carl Robinson Correctional Institution in Enfield. Building four is one of six buildings considered minimum to medium security and, like all six buildings, is divided into an A side and a B side. Each side has bathrooms, a dayroom, a telephone area, windows and two entrances. Each side houses approximately eighty-five inmates. The inmates have access to an outside area where they can interact freely.

On July 12, 1994, at approximately 5:45 p.m., two opposing groups of inmates lined up in the outside area and began attacking each other with makeshift weapons. Initially, the inmates were attacking only opposing gang members; however, the attacks spread

to nongang members on the basis of where they were from and whether they were homosexuals. Most of the inmates wore cloth masks or T-shirts covering their faces. Correction officers in dorm 4 locked the outside doors. Shortly thereafter, inmates started to smash the windows and climb inside in search of other inmates. The officers from dorm 4 and an inmate locked themselves in a bathroom.

The defendant was outside at the start of the riot. Shortly thereafter, the defendant and others broke the windows and climbed into dorm 4B through the broken windows. The defendant was seen carrying various makeshift weapons. He was also seen pointing out to other inmates those who were either homosexual or not from Hartford. The defendant and about six other inmates were seen near Richard Mann in the back of the dorm where Mann was stabbed to death.

The defendant pointed out to one inmate, who was known as Hammer, another inmate, Kenneth Henton, as being from Bridgeport. Hammer hit Henton on the head with a pipe and Henton was knocked unconscious. The correction officers in the bathroom heard the inmates beating up Henton. When the correction officers left the bathroom, they saw Henton lying on the floor in a pool of blood. Henton initially was placed in the medical unit at the correction facility and he was later transferred to the hospital. Henton regained consciousness in the hospital. He had four missing teeth, two stab wounds in his thumb and had been stabbed in his eye and ear.

The defendant and a group of inmates surrounded another inmate, John Bratz, and began attacking him. During the attack, the defendant hit Bratz with what appeared to be a metal vacuum cleaner pipe. During the attack, Bratz sustained multiple stab wounds to his arm, his teeth were knocked loose and his head was

split open. He also had wounds to his head, shoulders and upper body. He lost a considerable amount of blood. Bratz was carried to the medical unit and lost consciousness several times due to the pain. Bratz went into shock and was admitted to a hospital where he underwent surgery.

During the incident, approximately 300 inmates were armed. Small fires blazed and doors and windows were damaged and broken. The approximately fifty correction officers were unarmed and outnumbered and focused their efforts on retrieving staff from the dorms until reinforcements from the state police and correctional emergency response team arrived. Order was not restored in the facility until after 11 p.m. Other facts will be discussed where relevant to the issues on appeal.

I

The defendant first claims that the evidence was insufficient to support his conviction of rioting in a correctional institution, assault in the first degree and assault in the second degree. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996)." (Internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 670, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

"As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the

[trier of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) Id., 671.

A

The defendant first claims that the evidence presented was insufficient to support his conviction of rioting in a correctional institution in violation of § 53a-179b[1] because the state did not prove beyond a reasonable doubt that the defendant "did incite, instigate, cause, aid, abet, assist and take part in a disorder, disturbance or riot." We decline to review this claim.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *Raymond v. Rock Acquisition Ltd. Partnership*, 50 Conn. App. 411, 420, 717 A.2d 824 (1998); see also *State v. Leary*, 51 Conn. App. 497, 499, 725 A.2d 328 (1999); *Blakeney v. Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cummings v. Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996).

---

[1] General Statutes § 53a-179b (a) provides: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution."

In his brief, the defendant sets out this claim, the relevant facts, the reviewability, and the standard of review; however, he does not provide this court with any citation to legal authority. In fact, he did not provide this court with any legal analysis of this issue. Accordingly, we decline to review this claim.

## B

The defendant next claims that the evidence was insufficient to support his conviction of assault in the first degree in violation of § 53a-59 (a) (1) and (4)[2] and § 53a-8[3] against Bratz. We disagree.

It should be noted that, in this case, the defendant was charged with assault against Bratz as an accessory, and, therefore, the state did not need to prove that the defendant actually caused serious physical injury to Bratz. It is enough for the state to prove that the defendant, acting with the intent to cause serious injury to Bratz, solicited, requested, commanded, importuned or intentionally aided another person to cause serious physical injury to Bratz by means of a dangerous weapon. See General Statutes §§ 53a-59 and 53a-8.

## 1

The defendant first argues that the evidence was insufficient to prove beyond a reasonable doubt that he caused the injury to Bratz. Specifically, the defendant

---

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

argues that there was no evidence introduced that he caused the injury to Bratz. The defendant further argues that, with regard to his culpability as an accessory, there was insufficient evidence that he intended to aid the principal and that he intended to commit the offense charged as required by the statute. We disagree.

The state introduced the following evidence. The defendant was seen carrying various makeshift weapons during the incident on July 12, 1994. The defendant was seen pointing out to other inmates those who were either homosexual or not from Hartford. He also was seen in the back of dorm 4B near Mann when Mann was stabbed to death. The defendant pointed out to an inmate known as Hammer that another inmate, Henton, was from Bridgeport, and shortly thereafter Hammer hit Henton in the head with a pipe.

The defendant was one of a group of inmates who surrounded and attacked Bratz. Bratz was stabbed and hit with various makeshift weapons. The defendant participated in the attack by hitting Bratz with a pipe from a vacuum cleaner hose.

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of

facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rozmyslowicz*, 52 Conn. App. 149, 152–53, 726 A.2d 142 (1999). On the basis of the evidence and the logical inferences that could be drawn therefrom, a jury reasonably could conclude that the defendant acted with the mental state required to be convicted as an accessory to the assault against Bratz.

2

The defendant next argues that the evidence was insufficient to prove beyond a reasonable doubt that he caused the injury to Bratz by means of a dangerous instrument. Specifically, the defendant argues that there was no evidence that he used a dangerous instrument because the only description provided was a "vague description of a vacuum hose." We disagree.

A dangerous instrument "means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is *capable of causing* death or serious physical injury . . . ." (Emphasis added.) General Statutes § 53a-3 (7). "[A] dangerous instrument may be an ordinary object not designed to cause death or serious physical injury . . . [E]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury." (Citation omitted.) *State* v. *Mercer*, 29 Conn. App. 679, 682, 617 A.2d 916 (1992), cert. denied, 225 Conn. 902, 621 A.2d 285 (1993).

The state introduced the following evidence. During the July 12, 1994 incident, Bratz was stabbed under the armpit with a screwdriver. Bratz testified that he "got stabbed all through the arm," had his "head split open" and that the defendant hit him with an aluminum pipe

from a vacuum cleaner hose. He also testified that he was stabbed with an ice pick. Another inmate, Maurice Washington, testified that he observed Bratz being attacked with "two by fours, canes, scissors . . . [and] TV antennas." We note that "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Rozmyslowicz*, supra, 52 Conn. App. 152. We conclude that it was reasonable and justifiable for the jury to conclude that, under the circumstances of this case, the metal vacuum cleaner pipe, the screwdriver, the ice pick, the two by fours, the canes, the scissors, or the TV antennae were capable of causing death or serious physical injury and were, therefore, dangerous instruments.[4]

3

The defendant next argues that the evidence was insufficient to prove that there was "serious physical injury" to Bratz. Specifically, the defendant argues that without "evidence through medical personnel at the medical unit of the [correctional institution], Johnson Memorial Hospital or Somers Hospital to indicate a diagnosis or prognosis of the nature, extent and/or type

---

[4] As we noted previously, because the defendant was charged as an accessory to the assault in the first degree against Bratz, the state was required to prove only that the defendant, acting with the intent to cause serious injury to Bratz, solicited, requested, commanded, importuned or intentionally aided *another person to cause serious physical injury to Bratz by means of a dangerous weapon.* In fact, it was not necessary for the state to prove that the defendant used a dangerous weapon as long as one of the other participants caused serious physical injury to Bratz by means of a dangerous weapon.

of injuries on the body of John Bratz" the jury would need to resort to improper speculation. We disagree.

Serious physical injury "means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). The state introduced the following evidence. Bratz testified to the following facts. He was stabbed under the armpit with a screwdriver and "got stabbed all through the arm" and had his "head split open" and had his "teeth knocked loose." He was hospitalized for "a long, long time with this. Had to leave it open and everything else. They had to put tubes all up inside here. I went through hell." He received twenty-one stab wounds to his arm and the stab wounds went "through the muscle and everything like that." He indicated that the defendant participated in the attack by hitting him with an aluminum pipe from a vacuum cleaner hose.

He stated that, when he was carried out of dorm 4B, he passed out from the pain and every time they moved his body he would "wake up and pass out, wake up and pass out because the pain was so bad." He testified that he "got knocked out. They said I died seven times coming off the compound . . . They hit me with the plungers. I was on Channel 3 news going up the thing with a white towel around me, but the towel was pure red with blood." He testified that he was "going into shock" and was taken by ambulance to Johnson Memorial Hospital where surgery was performed.

We note that "[i]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence. . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common

knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Chapman*, 46 Conn. App. 24, 35, 698 A.2d 347, cert. denied, 243 Conn. 947, 704 A.2d 800 (1997), cert. denied, 523 U.S. 1063, 118 S. Ct. 1393, 140 L. Ed. 2d 652 (1998). On the basis of the evidence and the logical inferences that could be drawn therefrom, a jury reasonably could conclude Bratz sustained serious physical injury. Accordingly, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant was guilty of assault in the first degree against Bratz.

## C

The defendant next claims that the evidence was insufficient to support his conviction of assault in the second degree in violation of §§ 53a-60 (a) (1)[5] and 53a-8[6] against Henton. We disagree.

In this case, the defendant was charged as an accessory to the assault against Henton and, therefore, the state did not need to prove that the defendant actually caused the serious physical injury to Henton. It is enough for the state to prove that the defendant, acting with the intent to cause serious injury to Henton, solicited, requested, commanded, importuned or intentionally aided another person to cause serious physical injury to Henton. See General Statutes §§ 53a-60 and 53a-8.

## 1

The defendant first argues that the evidence was insufficient to prove beyond a reasonable doubt that

[5] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[6] See footnote 3.

the defendant caused the injury to Henton. Specifically, the defendant argues that the testimony that the defendant pointed to Henton and stated, "He's from Bridgeport," in the presence of an inmate known as Hammer is not sufficient to show that the defendant ordered Hammer to assault Henton. The defendant further argues that this testimony is insufficient to prove that the defendant intended to aid the principal and that he intended to commit the offense charged as required by the statute. We disagree.

The state introduced the following evidence. The defendant was seen carrying various makeshift weapons during the incident on July 12, 1994. The defendant was seen pointing out to other inmates those inmates who were either homosexual or not from Hartford. He also was seen in the back of dorm 4B near Mann when Mann was stabbed to death. The defendant was one of a group of inmates who surrounded and attacked Bratz. Bratz was stabbed and hit with various makeshift weapons including a pipe from a vacuum cleaner hose wielded by the defendant. Additionally, the defendant pointed out to Hammer that another inmate, Henton, was from Bridgeport and, shortly thereafter, Hammer hit Henton in the head with a pipe.

As we indicated, "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) State v. Rozmyslowicz, supra, 52 Conn. App. 152. On the basis of the evidence and the logical inferences that could be drawn therefrom, a jury reasonably could conclude that the defendant acted with the mental

state required to be convicted as an accessory to the assault against Henton.

### 2

The defendant next argues that the evidence was insufficient to prove that there was "serious physical injury"[7] to Henton. Specifically, the defendant argues that without "evidence through medical personnel at the medical unit of the [correctional institution] or Saint Francis Hospital and Medical Center to indicate the nature, extent and/or type of injuries on the body of Kenneth Henton" the jury would need to resort to improper speculation. We disagree.

The state introduced the following evidence. The defendant indicated to Hammer that Henton was from Bridgeport. Shortly thereafter, Hammer hit Henton in the head with a pipe and Henton saw a flash. The next thing Henton remembered was waking up in a hospital. Henton testified that he had four teeth knocked out, that his "cheekbone area from around to the side of my head [was still] numb" at the time of trial, that he had two stab wounds in his thumb and he "got stabbed in the eye" and he "got stabbed in the ear."

On the basis of the evidence and the logical inferences that could be drawn therefrom, a jury reasonably could conclude that there was a serious physical injury to Henton. Accordingly, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant was guilty as an accessary to assault in the second degree against Henton.

### II

The defendant next claims that the state improperly charged him as both a principal and an accessory to

---

[7] For the definition of "serious physical injury," see General Statutes § 53a-3 (4), as discussed in part I B 3 of this opinion.

the first degree assault against Bratz and, therefore, there was insufficient notice of the charges.[8] We disagree.

The defendant never raised this issue at trial and seeks review under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 232, 239–40, 567 A.2d 823 (1989).[9] We conclude that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

A criminal defendant has a constitutional right to be informed of the "nature and cause of the charges against

---

[8] The defendant argues that "[t]he state charged count three in a mixture of theories that was, at least, vague and confusing." We note, ironically, that the defendant's argument on this issue is based on a hodgepodge of theories including that the instruction was confusing, the evidence is insufficient, the charge was vague and confusing, the charge went well beyond the scope of liability permitted by statute and there is insufficient notice of the charges. The defendant's argument was vague and confusing and only the insufficient notice of the charges claim cites to any case law. The defendant's argument does not, however, provide any analysis as to how this case supports his claim. With regard to his other claims, "[c]laimed errors not adequately briefed and not fully developed will not be considered by this court. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Citations omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 400, 662 A.2d 118 (1995). Therefore, we will only consider the defendant's claim that there was insufficient notice of the charges.

[9] "In *State* v. *Golding*, [supra, 213 Conn. 239–40, our Supreme Court] reformulated the standard announced in *State* v. *Evans*, supra [165 Conn. 61], for appellate consideration of constitutional claims that were not preserved at trial. [Our Supreme Court] stated that 'a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' . . . *State* v. *Golding*, supra [239–40]. We noted that we would remain free to dispose of the claim 'by focusing on whichever condition is most relevant in the particular circumstances.' Id., 240." (Emphasis in original.) *State* v. *Watlington*, 216 Conn. 188, 192, 579 A.2d 490 (1990).

him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Spigarolo,* 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). The state has satisfied this constitutional mandate when its pleadings "informed the defendant of the charge[s] against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Internal quotation marks omitted.) Id. "In order to establish a violation of the right to fair notice, a defendant must show not only that the information was insufficient, but also that he was in fact prejudiced in his defense on the merits and that a substantial injustice was done because of the lack of specificity in the pleadings. . . . Such a showing amounting to a deprivation of his constitutional right to adequate notice of the charges against him is not made, however, merely by establishing that the presentation of his . . . defense may be more burdensome and difficult." (Citations omitted; internal quotation marks omitted.) *State* v. *Rogers,* 38 Conn. App. 777, 789, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

The defendant argued that the charge in the information was "vague and confusing." The defendant, however, never argues that he was prejudiced or that substantial injustice was done. While the defendant cites to *State* v. *Bergin,* 214 Conn. 657, 674–75, 574 A.2d 164 (1990), he does not provide analysis as to how this case supports his claim. See *State* v. *Mozell,* 37 Conn. App. 574, 580–81, 657 A.2d 686, cert. denied, 234 Conn. 910, 660 A.2d 355 (1995) (issue inadequately briefed when defendant cited two cases without analysis or attempt to analogize and failed to address factors used

to determine whether defendant's right to speedy trial was violated). We conclude, therefore, that the defendant failed to show that he was prejudiced in his defense on the merits and that a substantial injustice was done. Accordingly, the defendant's claim fails under the third condition in *Golding*.

### III

The defendant next claims that the prosecutor committed prosecutorial misconduct by filing an unsubstantiated sixth count charging the defendant with assault in the first degree of Mann and showing an unadmitted photograph of Mann's dead body to the jury, thereby depriving him of his right to a fair trial. Specifically, he argues that these events demonstrate that the prosecutor had wanted to present the defendant in the worst possible light to the jury. We decline to review these claims.

The defendant failed to raise these claims at trial. "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]." (Citations omitted.) *State* v. *Jones*, 50 Conn. App. 338, 346–47, 718 A.2d 470 (1998), cert. denied, 248 Conn. 915, 734 A.2d 568 (1999). In this case, the defendant did not request review under *Golding*. "In the absence of such a request, we have, in the past declined to review a defendant's claim under similar circumstances." Id. While the defendant did argue that this claim raises a constitutional issue,[10] he did not request review under *Golding*.

---

[10] The defendant argues that "due process of law requires the trial court to ensure that the jury remains impartial and unprejudiced throughout the trial. . . . The jury cannot remain impartial and unprejudiced if they are shown extrinsic, highly prejudicial, irrelevant real evidence. . . . Consider-

"Claims on appeal that are inadequately briefed are deemed abandoned. . . . This rule applies to claims that the defendant is entitled to *Evans-Golding* review." (Citations omitted.) *State* v. *Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997). It is appropriate for this court to decline to review an issue where the defendant has "not adequately briefed the propriety of *Evans-Golding* review." Id., 824. Accordingly, we decline to review this claim.

In any event, the defendant has not identified any evidence that substantiates his claim that the jury saw the photograph of the dead body of Mann.[11] With regard to the prosecutor's alleged filing of an unsubstantiated sixth count charging the defendant with assault in the first degree of Mann, the defendant did not cite to any case law indicating that it is prosecutorial misconduct for the state to bring a count that ultimately fails for lack of sufficient evidence.

IV

The defendant next claims that the trial court " 'held' that there were 'dangerous instruments' at or near dorm 4B on the date of the incident" and, therefore, deprived the defendant of his right to have the trier of fact decide factual issues. The defendant did not provide this court with any substantive discussion of this issue or citation to legal authority. As we previously have indicated, "[w]here a claim is asserted in the statement of issues but thereafter receives only cursory attention in the

ation of extrinsic evidence is presumptively prejudicial because it implicates a defendant's constitutional right to a fair trial before an impartial jury."

[11] With regard to the photograph, the defendant points to the trial court's statement in the transcript that: "The problem is the man is charged with assault in the first degree and you can't be parading dead pictures, murdered victims, in front of the jury." This statement, however, does not indicate that the prosecutor did, in fact, parade the pictures in front of the jury. We note that the trial court's statement was made outside the presence of the jury. The defendant did not indicate any other evidence that the jury saw the photograph.

brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, supra, 40 Conn. App. 45. Accordingly, we decline to review this claim.

## V

The defendant next claims that the trial court improperly instructed the jury on the second degree assault charge. Specifically, the defendant argues that the trial court misled the jury by instructing it that the defendant was charged with assault in the first degree against Henton and, after the amendment of the count, by not instructing the jury that the charge was changed to assault in the second degree. We decline to review this claim.

The state argues that this claim is raised for the first time on appeal and, since the defendant did not request any extraordinary review, this court should decline to review the defendant's claim. When a claim is raised for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine,[12] or *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant did not request review of this claim under either of these doctrines. "As this court has previously noted, it is not appropriate to engage in a level of review that is not requested." *State* v. *Hermann*, 38 Conn. App. 56, 65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Accordingly, we decline to review this claim.

## VI

The defendant next claims that his conviction of assault in the first degree against Bratz under both

[12] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

subdivisions (1) and (4) of § 53a-59 (a) consists of multiple punishments for the same offense and violates the double jeopardy clause of the fifth and fourteenth amendments to the United States constitution.[13] We disagree.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . . *State* v. *Greco*, 216 Conn. 282, 289–90, 579 A.2d 84 (1990). [T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction. . . . Id., 290. Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met.

---

[13] The defendant also claims a violation of article first, § 8, of the Connecticut constitution. "Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Belcher*, 51 Conn. App. 117, 119 n.7, 721 A.2d 899 (1998). The plaintiff, however, did not provide a separate analysis under the Connecticut constitution and, therefore, we are not bound to consider this claim. *State* v. *Blocker*, 46 Conn. App. 734, 738 n.7, 700 A.2d 1186, cert. denied, 243 Conn. 946, 704 A.2d 799 (1997). In any event, we consistently have held that the Connecticut constitution affords no greater protection than the United States constitution's double jeopardy clause. Id.

. . . Id., 290–91." (Internal quotation marks omitted.) *State* v. *James*, 247 Conn. 662, 671, 725 A.2d 316 (1999).

"In analyzing whether two offenses constitute the same offense, the United States Supreme Court has stated that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each* provision requires proof of a fact which the other does not. . . . *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Otto*, 50 Conn. App. 1, 18–19, 717 A.2d 775, cert. denied, 247 Conn. 927, 719 A.2d 1171 (1998). In this case, although the crimes arise out of the same act, each of the offenses requires proof of a fact which the other does not. A person is guilty of assault in the first degree pursuant to General Statutes § 53a-59 (a) (1) when "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . *by means of a deadly weapon or a dangerous instrument . . . .*" (Emphasis added.) A person is guilty of assault in the first degree pursuant to General Statutes § 53a-59 (a) (4) when "with intent to cause serious physicial injury to another person and *while aided by two or more other persons actually present,* he causes such injury to such person or to a third person . . . ." (Emphasis added.)

We conclude that, under the test articulated in *Blockburger* v. *United States*, supra, 284 U.S. 304, the offenses of assault in the first degree pursuant to § 53a-59 (a) (1) and (4) are two separate offenses for double jeopardy purposes. We note that "the *Blockburger* test is not a conclusive presumption of law . . . but is a rule of statutory construction, and . . . should not be controlling where, for example, there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State* v. *Delgado*, 19 Conn. App. 245, 251, 562 A.2d 539 (1989). In this case, however, the

defendant did not provide this court with any legal analysis of the legislative intent that these two subdivisions should be treated as one offense for double jeopardy purposes and, therefore, failed to rebut the presumption established in *Blockburger* that he was convicted of two crimes warranting two separate punishments. See *State* v. *Morris*, 49 Conn. App. 409, 420, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998). Accordingly, we conclude that the defendant's conviction under both subdivisions (1) and (4) of § 53a-59 (a) does not violate his right against double jeopardy.

## VII

The defendant finally claims that the trial court improperly admitted into evidence a list of inmates inside dorm 4B after the riot. Specifically, the defendant argues that the list of inmates is hearsay and is, therefore, inadmissible. We disagree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *O'Brien* v. *Coburn*, 46 Conn. App. 620, 630–31, 700 A.2d 81, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

The following facts are relevant to the resolution of this issue. Correction Officer Timothy McIntosh testified that order was restored to the correction facility at approximately 11:15 p.m. McIntosh testified that, after order was restored, orders were given to the correctional staff to make a list of the name, identification

number and bed location of every inmate within the fence line of the correctional facility and that the list included dorm 4B. McIntosh testified that the census information was recorded at the same time it was taken and was sent over to the control center. McIntosh testified that he provided the state with a copy of the census. He further testified that the document marked for identification as exhibit 13 was a fair and accurate copy of the census document. The defendant's counsel objected to the admission of the exhibit arguing that there was no foundation laid as to the regular course of business. After questioning the witness, the court overruled the defendant's objection and the document was admitted as a full exhibit.

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998). The trial court admitted the census of inmates under the business records exception to the rule against hearsay over the defendant's objection. See General Statutes § 52-180.[14] "General Statutes § 52-180 permits hearsay evidence to be admitted if (1) [the]

___

[14] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

writing was made in the regular course of business, (2) it was the regular course of the business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence or within a reasonable time thereof. *State* v. *Scott*, 31 Conn. App. 660, 665, 626 A.2d 817 (1993). To qualify a document as a business record, the party offering it must present a witness who testifies that these three requirements have been met. *State* v. *Lawler*, 30 Conn. App. 827, 831–32, 622 A.2d 1040 (1993). The trial court has discretion to determine whether the statute is satisfied and appellate courts must construe the statute liberally when reviewing abuse of discretion. *State* v. *Scott*, supra [665]; *State* v. *Lawler*, supra [832]. *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 709–10, 638 A.2d 44 (1994). . . . *Shadhali, Inc.* v. *Hintlian*, [41 Conn. App. 225, 227–28, 675 A.2d 3, cert. denied, 237 Conn. 926, 677 A.2d 948 (1996)]. [T]he essential hallmark of admissibility under § 52-180 is the trustworthiness of the document; *American Oil Co.* v. *Valenti*, 179 Conn. 349, 358–59, 426 A.2d 305 (1979) . . . . *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 141, 520 A.2d 173 (1987)." (Internal quotation marks omitted.) *Berkeley Federal Bank & Trust, FSB* v. *Ogalin*, 48 Conn. App. 205, 208–209, 708 A.2d 620, cert. denied, 244 Conn. 933, 711 A.2d 726 (1998).

We conclude that McIntosh's testimony satisfied all three requirements of the business record exception to the rule against hearsay. McIntosh testified that the officers are trained to take a census of the inmates present in the dormitories after riots have ended. He testified that it is the regular course of the institution to take such a census and that the census was taken in the regular course of institution business. He further testified that the list of inmate names was transcribed contemporaneously with the census and that the list was reported to the control center. He further testified

that the document marked as exhibit thirteen was a fair and accurate copy of the original census list.

The defendant argues that "[t]he witness was not sure of who took the census and was not present during the census, therefore there [were] no guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exception." Section 52-180, however, "expressly provides that the proponent of the business record need not produce that person who made the record or show that the person is unavailable." *State* v. *Damon*, 214 Conn. 146, 160, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990). McIntosh believed that the census was taken by Officer James Hensley. McIntosh's testimony indicates that the purpose of the census was to determine the whereabouts of the inmates and that the correctional facility relied on the census for that purpose. We conclude, therefore, that the document was sufficiently trustworthy to be admitted under § 52-180. Accordingly, we hold that the trial court did not abuse its discretion by admitting the census into evidence pursuant to the business records exception to the rule against hearsay.

The judgment is affirmed.

In this opinion the other judges concurred.